POWERS, J.
*798 Defendant challenges his conviction for coercion constituting domestic violence, ORS 163.275, asserting that the trial court erred by denying his motion to suppress evidence and statements obtained after police officers forced entry into his apartment without first obtaining a warrant.[1] The state remonstrates that the trial court correctly concluded that the warrantless entry was justified by the emergency aid exception to the warrant requirement. We agree with the state that the officers had an objectively reasonable belief that entry into defendant's apartment was necessary to immediately aid, or to assist someone who had suffered, or was imminently threatened with suffering, serious physical injury or harm. Accordingly, we affirm.
We review the denial of defendant's motion to suppress evidence for errors of law and, in so doing, we are "bound by the trial court's findings of fact if they are supported by the record." State v. Baker , 350 Or. 641, 650, 260 P.3d 476 (2011). If the trial court did not make explicit findings on facts that could be decided more than one way based on the evidence in the record, then we will infer that the court found those facts consistent with the trial court's ultimate conclusion. Ball v. Gladden , 250 Or 485, 487, 443 P.2d 621 (1968). We describe the facts consistent with those standards of review.
Officers Anderson and Delong arrived at an apartment complex based on a report that a neighbor heard sounds of a man and woman arguing and that the fight was escalating. Anderson and Delong parked a block away from the apartment complex and, as they walked toward the apartment complex, they could hear a man and a woman having a loud conversation but could not hear specifically what was being said. The apartment complex had approximately 100 units, and because the officers were dispatched to the general area and not a specific apartment, Anderson and *1040 Delong spoke with neighbors to confirm the apartment from which the loud argument was emanating. As the officers *799 approached defendant's apartment, Anderson heard a door slam, both officers heard a man say "shut the fuck up," and Anderson testified that he heard, "shut the fuck up," a second time. The officers heard a woman who sounded like she was in distress, crying and whimpering. Then Anderson heard "a loud, loud thump, really severely loud," that sounded like a "big, loud crash." Additional officers arrived on scene. When they stood at the front of defendant's apartment, the officers did not hear any sounds coming from inside. The officers knocked for approximately 10 minutes and did not receive a response.
Anderson testified that he was concerned for the safety of both the woman and the man inside the apartment, and "feared that somebody was injured or was going to be injured inside, more likely than not, based on what [he] could tell, the female." Delong, who was worried that the woman might be physically harmed, was "concerned that she was in danger, that she was being held against her will." After Anderson and Delong had been at the apartment complex for approximately 15 to 20 minutes, and after having knocked on the apartment door for approximately 10 minutes with no response, another officer used a small battering ram to force entry into the apartment.
Once the officers were inside, Delong saw a man, later identified as defendant, walk out of the back bedroom and a woman, T, standing behind defendant in the doorway of the back bedroom. Delong placed defendant in handcuffs and took him outside to be interviewed. Anderson testified that T was crying, obviously shaken up, and that she thanked him for coming inside. Anderson interviewed T, and the investigation revealed that defendant sought to control T's movements by verbal threats.
Defendant was charged with, among other crimes, two counts of coercion constituting domestic violence. Defendant moved to suppress the evidence obtained after the officers entered his apartment, arguing that the officers illegally entered his apartment because entry was not justified by a warrant or the emergency aid exception to the warrant requirement. He reasoned that the officers' belief was not objectively reasonable because neither officer testified *800 about any sounds consistent with a physical altercation or injury. Defendant contended that all evidence collected after the warrantless entry should be suppressed, including his and T's statements and the officers' observations. The state argued that based on the totality of the circumstances-that the officers responded to a domestic violence call, heard multiple "shut the fuck up" statements by a man, the sound of a woman crying and whimpering in distress, a loud thump, and then heard silence and no response to their knocking-the officers' concerns were objectively reasonable. The trial court denied defendant's motion to suppress, concluding:
"[T]he officers clearly heard the sounds of an argument that involved yelling, screaming and the slamming of doors. * * *
"That's compounded by the fact, however, that on multiple occasions they heard the male yell presumably to the female, 'Shut the fuck up,' thus indicating that one person in this affair is trying to silence or prevent the other person from potentially interacting with others. *** [T]his is then accompanied by the description of the 'loud thump,' which I will note for the record is different. *** [T]he witness testified he heard a slamming of the door, he then testified that he heard a loud thump. *** [S]o this witness clearly knew how to describe the slamming of a door and didn't by describing the thump. And so that, to me, is a difference that matters.
"And then, of course, the sounds of the woman crying, whimpering, *** which the other witness described as high pitched and in distress, combined with the verbal 'Shut the fuck up' statements to keep a person quiet, accompanied by the thump, and then of course the silence. And based upon those, *** I do believe that the concern for the individual that there may be a need to render imminent aid, was objectively reasonable under those circumstances. And for that reason, I will deny the motion."
*1041 Following a bench trial, the court found defendant guilty of, among other crimes, both counts of coercion constituting domestic violence, which merged into a single coercion conviction.
On appeal, defendant renews his argument that the officers' warrantless entry into his home violated his constitutional right to be free from unreasonable search and *801 seizure under Article I, section 9, of the Oregon Constitution.[2] He maintains that the emergency aid exception to the warrant requirement does not apply because the officers' belief was not objectively reasonable, arguing that the officers had only a basis for concern about the victim's welfare and that they did not have clear indications that anyone inside had suffered or was imminently threatened with suffering serious physical injury or harm.
In response, the state argues that, under the circumstances, the officers had an objectively reasonable belief that someone inside needed aid or assistance because the sounds they heard suggested physical violence. The officers heard a man say "shut the fuck up," a woman crying and whimpering, a loud thump, and then silence. The state reasons that those circumstances reasonably suggest that the woman was incapable of answering the officers' knocks and that the man wanted to conceal from police the events within the apartment. Thus, the state contends that the trial court correctly denied defendant's motion to suppress. We agree with the state that, under the circumstances, the officers' belief was objectively reasonable.
Warrantless entries and searches are per se unreasonable under the Oregon Constitution unless they fall within one of the specific exceptions to the warrant requirement, such as the emergency aid exception. Baker , 350 Or. at 647, 260 P.3d 476. To justify the emergency aid exception, the state must prove facts sufficient to establish that the circumstances at the time necessitated a warrantless entry. Id . The Oregon Supreme Court has explained that
"an emergency aid exception to the Article I, section 9 warrant requirement is justified when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm."
*802 Id. at 649, 260 P.3d 476 (footnotes omitted). The state must establish that the officers had both a subjective belief that someone needed immediate aid or assistance and that that belief was objectively reasonable. State v. Garcia , 276 Or. App. 838, 846, 370 P.3d 512 (2016). The parties do not dispute that Anderson and Delong had a subjective belief that someone needed immediate aid or assistance. Therefore, the sole question on appeal is whether the officers' belief was objectively reasonable under the circumstances.
In arguing that the officers' belief was not objectively reasonable, defendant asserts that this case is similar to State v. Fredricks , 238 Or. App. 349, 243 P.3d 97 (2010), where the officers in that case did not hear any sounds suggesting physical violence.[3] In that case, officers responding to a report of a loud argument arrived on scene and heard a man and a woman arguing. Id. at 351-52, 243 P.3d 97. When the officers *1042 knocked, the defendant opened the door and appeared calm. Id. at 352, 243 P.3d 97. The officers entered the defendant's motel room with the defendant's permission and spoke with a woman inside, who did not appear to be physically injured, and told the officer that she had not been assaulted. Id. at 352-53, 243 P.3d 97. Nonetheless, the officers searched a room without a warrant to look for controlled substances. Id. at 353, 243 P.3d 97. We concluded that without hearing sounds consistent with physical injury, the emergency aid exception did not justify the warrantless search after the officers determined that all possible victims had not been physically harmed. Id. at 358-59, 243 P.3d 97. Unlike the officers in Fredricks , however, the officers in this case heard a man repeatedly say "shut the fuck up," a woman *803 crying such that she sounded as if she was in distress, a loud thump, and then ensuing silence. Notably, the thump sound was found to be inconsistent with the earlier sounds of door slamming. Taken together, the circumstances presented were indicative of more than a verbal argument. See, e.g. , Garcia , 276 Or. App. at 849, 370 P.3d 512 (concluding that the officers had an objectively reasonable belief that a potential victim could not respond or was in need of immediate medical assistance under the circumstances).
Although neither the officers nor the neighbors explicitly reported hearing sounds directly linked to a physical assault, the overall context of the situation established that the officers' concerns were objectively reasonable. The sounds of a loud argument reported by the 9-1-1 caller, the observations made by Anderson and Delong before they began knocking-a woman crying and whimpering and a man yelling "shut the fuck up," followed by a loud thump-and the silence that the officers heard after knocking and receiving no response from the individuals inside the apartment support an objectively reasonable belief that more than a verbal argument was happening inside the apartment such that someone needed immediate aid or assistance.
Affirmed.

Defendant was also convicted of assault in the fourth degree constituting domestic violence, ORS 163.160(2) ; however, he does not challenge that conviction on appeal.

Article I, section 9, provides, in part:
"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Prior to Baker , which was decided by the Supreme Court in 2011, cases involving the emergency aid exception to the warrant requirement were analyzed under a standard set out in State v. Follett , 115 Or. App. 672, 680, 840 P.2d 1298 (1992), rev. den. , 317 Or. 163, 856 P.2d 318 (1993). The Baker standard retains some aspects of the Follett test, but under Follett the officers "had to believe that the person was in danger of dying." State v. McCullough , 264 Or. App. 496, 502, 336 P.3d 6 (2014). Under Baker , the required level of harm is less, viz. , serious physical injury or harm. 350 Or. at 649, 260 P.3d 476. We understand that the other aspects of the emergency aid exception in cases decided before Baker remain unchanged. See State v. Hamilton , 285 Or. App. 315, 321 n.1, 397 P.3d 61 (2017) (explaining same and noting that "[t]hose aspects include our previous holdings that the emergency aid exception applies only when an officer has a belief that there is an immediate need to aid or assist a person, and that belief is objectively reasonable" (internal quotation marks and citation omitted) ).